UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                   :

**UNITED STATES OF AMERICA**,

                      Plaintiff,

         – against –

**WILFREDO ARROYO**,

                    Defendant.

------------------------------------------------------------------ X

:   **MEMORANDUM DECISION AND ORDER**

:   92-CR-91 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On November 3, 1995, Judge Raymond J. Dearie sentenced the defendant to multiple life sentences for his role in the Supreme Team, a violent criminal organization.  Before the Court is the defendant's *pro se* motion for a sentence reduction pursuant to Section 404 of the First Step Act of 2018 ("First Step Act").  (ECF No. 922.)  The government argues that the defendant is not eligible for relief under the First Step Act, and that the Court should deny the motion even if he were eligible.  (ECF No. 932.)  As explained below, the defendant's motion is denied.[1]

**BACKGROUND**

**I.    Factual Background**

The Supreme Team was a cocaine base trafficking enterprise that operated in Queens from the early 1980s through the early 1990s.  (ECF No. 903, Amended Presentence Investigation Report for Wilfredo Arroyo ("PSR") ¶ 21.)  The defendant joined the Supreme Team in 1986 and "oversaw crews of women who packaged the crack into vials for street sale."

---

[1] The case was reassigned to this Court on August 27, 2024, after Judge Dearie retired.  (*ECF Order dated Aug. 27, 2024.*)

(*Id.* ¶ 26.)[2]  By 1989, the defendant controlled the "security cell of the organization . . . . Under the direct supervision of [the defendant], the security force would carry out the enforcement duties of the organization, which included numerous murders, attempted murders and acts of intimation [sic]."  (*Id.* ¶ 66.)  The defendant was also "the supervisor of the 'Supreme Team's' narcotic distribution;" he "specifically held supervisory control over the purchasing of cocaine, and having the cocaine 'cooked' into crack."  (*Id.* ¶¶ 66–67.)  When the head of the Supreme Team, co-defendant Gerald Miller, was arrested that same year, the defendant became the group's "de facto leader," although he had contact with Miller during this time.  (Sentencing Tr. 26:5-21; *see also* PSR ¶ 66.)

## II.     Trial and Sentencing

The defendant was convicted after a jury trial of racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 and 841(b)(1)(A) (Count Two); distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) (Counts Seven, Eight, Nine, and Ten); use of an interstate facility to promote a business enterprise involving narcotics, in violation of 18 U.S.C § 1953(a)(3) (Count Five); and possession with intent to distribute cocaine, in violation of 21 U.S.C § 841(a) and 841(b)(1)(C) (Count Six).  (PSR at 3.)  In connection with Count 1, the defendant was found guilty of ten predicate racketeering acts; these included the murders of fellow gang member Gus Rivera, and Fernando Suarez and Pablo Perlaza, from whom the gang bought cocaine.[3]  (*Id.* ¶¶ 4–13, 57–62.)  At sentencing, Judge Dearie concluded that the government proved by a preponderance of the evidence that the defendant and others murdered

---

[2] The defendant was on parole at this point, after serving about three years in prison.  (PSR ¶ 118.)

[3] The other seven acts were related to the counts of conviction.

four unidentified Colombian men in the summer of 1989, even though the jury found that these murders were not proven beyond a reasonable doubt. (Sentencing Tr. 23:18–24:1.) Judge Dearie also noted the defendant's "significant role" in the Supreme Team, and observed that he was an "intelligent man who was relied on extensively by Mr. Miller to run the operation, to oversee it, and to assist him in the day-to-day operations of this organization, as well as attend to some of the more grizzly necessities of the everyday life of [a] major organization." (Sentencing Tr. 35:2-8.)

The defendant's United States Sentencing Guidelines range was life. (PSR ¶ 146.) The counts for his narcotics convictions were grouped with their corresponding racketeering acts, and each murder was a separate group, for a total of four groups. (*Id.* ¶ 105.) The narcotics group had an adjusted offense level of 45, and each of the three murder groups had an adjusted offense level of 48. (*Id.* ¶¶ 106–09.) [4] The defendant's highest adjusted offense level (48 for each murder) was increased by four because of multiple counts, leading to a total combined offense level of 52. (*Id.* ¶¶ 111–12; PSR Addendum at 42.) This combined offense level, together with the defendant's criminal history category of IV, led to a Guidelines range of life. (PSR ¶ 146.) On November 3, 1995, Judge Dearie sentenced the defendant to concurrent terms of life imprisonment on Counts One, Two, Seven, Eight, Nine, and Ten; five years' imprisonment on Count Five; and twenty years' imprisonment on Count Six. (Sentencing Tr. 44:25–45:7.)

---

[4] The PSR initially listed the narcotics group adjusted offense level as 49, but this was amended to 45. (*See* ECF No. 903, PSR Addendum at 42.) The groups' adjusted offense levels also reflected a two-level enhancement for obstruction of justice because the defendant suborned perjury from two witnesses at trial. (PSR ¶ 76.)

3

### III.    Subsequent Appeal and Motions

The Second Circuit Court of Appeals affirmed the defendant's conviction, as well as that of co-defendant Gerald Miller. *See United States v. Miller*, 116 F.3d 641 (2d Cir. 1997).[5] On December 2, 2022, Judge Dearie denied the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 912.)  Judge Dearie found that the defendant had not established "extraordinary and compelling reasons [to] justify a reduction in his sentence." (*Id.* at 2.)  He did not meet the age threshold for compassionate release under Application Note 1(B) to Guideline § 1B1.13, and he did not meet met the "demanding standard" of showing that he had "medical conditions that substantially diminish his ability to provide self-care." (*Id.* at 2.)

Judge Dearie also rejected the defendant's claim that his sentence was an "outlier among his co-defendants," finding that the sentence was "commensurate to his involvement and culpability in the Supreme Team's misconduct." (*Id.*)  Nor were the defendant's crimes "youthful transgressions." (*Id.* at 3.)  Judge Dearie dismissed the defendant's claims of rehabilitation, and his "near spotless disciplinary record," because in 1996, after he was sentenced in this case, the defendant "planned, attempted, and aided the fatal stabbing of another inmate," leading a hearing officer to opine "that Arroyo's actions reflect he has no regard for human life and called for maximum sanctions." (*Id.* (citation modified).)

Judge Dearie acknowledged that a "relevant change in sentencing law has transpired since [the defendant's] 1994 sentencing;" the life sentence under the Guidelines at the time was no longer mandatory after *United States v. Booker*, 543 U.S. 220 (2005). (*Id.*)  Judge Dearie nevertheless held that "[t]he change in sentencing law does not undo the crimes Arroyo

---

[5] The Second Circuit dismissed one count against Miller as duplicative of another count. *See Miller*, 116 F.3d at 678.

4

committed, diminish the nature of his acts, or otherwise warrant early release." (*Id.*)  Rather, the life sentences "reflect the § 3553(a) factors, in particular the seriousness of his offenses, his extensive criminal history, and the need for deterrence and public protection." (*Id.* at 4.)  Judge Dearie concluded: "There may come a day when the totality of the circumstances, in particular the amount of time Arroyo has spent in prison, his age, his medical conditions, and a consistently positive prison record, support a reduction in sentence.  But today is not that day." (*Id.*)

The defendant filed this motion on August 26, 2024.  (ECF No. 922.)  He asks the Court to reduce his sentence to time served, or to a term in the modified Guidelines range of 470 to 540 months.  (*Id.* at 13.)  The government opposes.  (ECF No. 932.)

## LEGAL STANDARD

"[U]nder Section 404 of the 2018 First Step Act, courts may retroactively apply the Fair Sentencing Act of 2010, which increased the quantity thresholds of crack cocaine needed to trigger certain penalties, to offenses committed before August 3, 2010." *United States v. Miller*, No. 92-CR-91, 2024 WL 4107211, at *3 (E.D.N.Y. Sept. 6, 2024) (citing First Step Act, Pub. L. No 115-391, § 404, 132 Stat. 5194, 5222 (2018); Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (2010)).  "Courts can now resentence individuals using the new, higher crack cocaine quantity thresholds if those individuals are currently serving sentences determined by the previous, lower quantity thresholds." *Id.*; *see also Concepcion v. United States*, 597 U.S. 481, 488 (2022) ("The First Step Act authorized district courts to 'impose a reduced sentence' for qualifying movants 'as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" (quoting Pub. L. 115–391, § 404(b), 132 Stat. 5222)).

**DISCUSSION**

### I.     Eligibility for Resentencing Under the First Step Act

Section 404(b) of the First Step Act allows a court, in its discretion, to reduce the sentence for a "covered offense" as if the Fair Sentencing Act was "in effect at the time the covered offense was committed."  First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (Dec. 21, 2018).  A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010."  *Id.* § 404(a).

The government argues that the defendant is not eligible for resentencing because the Fair Sentencing Act did not change statutory penalties for Count One — the RICO conviction. (ECF No. 932 at 6–10.)  Thus, the government argues, the offense is not a "covered offense" under the First Step Act.  (*Id.*)[6]  As discussed above, the RICO conviction was predicated on ten racketeering acts, three of which were for the murders of Gus Rivera, Fernando Suarez and Pablo Perlaza.  (PSR ¶¶ 4–13, 57–62.)  The government concedes that six of the other seven acts "would be covered offenses in their own right," but says that "[b]ecause the penalties for murder were not modified by the Fair Sentencing Act, murder is not a covered offense."  (ECF No. 932 at 7.)

In *United States v. Reed*, one of the defendants — Martell Jordan — was convicted of a multi-object conspiracy: conspiring to possess with intent to distribute, and to distribute, both 50 grams or more of crack cocaine and 5 kilograms or more of powder cocaine, in violation of 21 U.S.C. § 846 ("Section 846").  7 F.4th 105, 111 (2d Cir. 2021).  The statutory penalty for a

---

[6] The government asserts that whether Count One is a covered offense is dispositive, because if the Court cannot reduce the defendant's life sentence on Count One, "any resentencing on the other counts would be merely academic."  (ECF No. 932 at 10.)

Section 846 conspiracy "is determined by utilizing the penalties that would apply to the commission of the objectives of the conspiracy." *Id.* (citing 21 U.S.C. § 846). Thus, the statutory penalty for Jordan's offense was set forth in 21 U.S.C. § 841, which provided the penalties for, among other violations, the "'manufactur[ing], distribut[ing], or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense, a controlled substance,' including crack cocaine and powder cocaine." *Id.* (quoting 21 U.S.C. § 841).

Section 2 of the Fair Sentencing Act adjusted the statutory penalties for crack cocaine, but not powder cocaine, in 21 U.S.C. § 841(b)(1)(A)(iii) and 21 U.S.C. § 841(b)(1)(B)(iii). *Id.* The Second Circuit noted that a conviction under Section 846 involving only crack cocaine "would qualify as a 'covered offense' and would be eligible for a sentence reduction under the First Step Act because the statutory penalties associated with that offense were plainly 'modified' by Section 2 of the Fair Sentencing Act," but a conviction under Section 846 involving only powder cocaine would not be a "covered offense," and "would be ineligible for a sentence reduction under the First Step Act because the statutory penalties associated with that offense were not 'modified' by Section 2 of the Fair Sentencing Act." *Id.* "Less clear, however, are the circumstances presented here—that is, how Section 404 applies to Jordan's multi-object conspiracy offense, because it is based upon both an object involving crack cocaine (which is covered when charged as a separate offense) and an object involving powder cocaine (which is not covered when charged as a separate offense)." *Id.*

The Second Circuit ultimately found that Jordan's conviction under a conspiracy count for violating a statute whose penalty was modified by the First Step Act "triggers the 'covered offense' definition of the First Step Act," even though that count also involved an object whose statutory penalties were not modified. *Id.* at 113. Thus, the court concluded that "a sentence

7

arising from a multi-object conspiracy conviction involving a crack cocaine object, with a statutory penalty provision under 21 U.S.C. § 841(b)(1)(A)(iii) or 21 U.S.C. § 841(b)(1)(B)(iii), is a 'covered offense' under Section 404 that is eligible for a sentencing reduction, even when the other objects of the conspiracy (involving different controlled substances) triggered statutory penalties that were not modified and thus the applicable minimum and maximum penalties for the conspiracy offense remain unchanged." *Id.* at 110.

The government asserts that this reasoning does not apply to the racketeering count at issue in this case, because it was a multi-object conspiracy under RICO, 18 U.S.C. § 1962 ("Section 1962"). The difference, the government argues, is in how each statute derives its penalties. According to the government, "Section 846 relies entirely on other statutes for its statutory penalties;" thus, if a predicate of a Section 846 conspiracy violates Sections 841(b)(1)(A)(iii) or 841(b)(1)(B)(iii), those statutory penalties, which were modified by the Fair Sentencing Act, provide the statutory penalties for the Section 846 conviction. (ECF No. 932 at 7.) However, Section 1962 has its own statutory penalty provision: 18 U.S.C. § 1963 ("Section 1963"). Section 1963(a) provides that the maximum penalty for a violation of Section 1962 is 20 years unless "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment," in which case the maximum penalty is life. 18 U.S.C. § 1963(a).

As the government acknowledges, the Second Circuit has not decided whether *Reed* applies to racketeering predicates. At least two courts in this circuit have concluded that it does. In granting co-defendant Gerald Miller's motion for resentencing under the First Step Act, Judge Nicholas Garaufis found that even though "*Reed* focused on 'multi-object *conspiracies*' rather than racketeering charges, the Circuit's reasoning applies equally to racketeering charges."

*Miller*, 2024 WL 4107211 at *5 (citation omitted).[7]  This was because "the 'narcotics activity'

drove the overall sentence, as they were grouped together to determine [Miller's] offense level."

*Id.*  The fact that "the crack cocaine acts and quantities affected sentencing for the RICO

conviction . . . suffices to re-examine the sentence under *Reed*'s analysis of the First Step Act."

*Id.*; *see also United States v. Sumler*, No. 95-CR-154, 2021 WL 6134594 at *12 (D.D.C. Dec. 28,

2021) (finding that the defendant's conviction for a RICO conspiracy is a covered offense, and

stating that "even though the penalty provision in § 1963(a) was not directly amended by the Fair

Sentencing Act, examination of the predicate offense convictions is necessary to determine

whether the 'statutory penalties' were 'modified'" (quoting First Step Act § 404(a))).

Judge Alvin W. Thompson in the District of Connecticut has reached the same

conclusion, citing Judge Lynch's observation in the *Reed* concurrence that "the language of the

First Step Act is sufficiently susceptible of a more generous reading to be characterized as

ambiguous, and in such situations the rule of lenity counsels adopting the interpretation that

favors liberty." *Reed*, 7 F.4th at 119; *see United States v. Roman*, No. 94-CR-112, 2023 WL

8435990, at *4–5 (D. Conn. Dec. 5, 2023) ("While *United States v. Reed* is not directly on point

because none of the counts at issue here involve a multi-object conspiracy, the court finds helpful

the analysis in the concurring opinion . . . . Thus, the court concludes that Count 1 and Count 2

are covered offenses."), *appeal dismissed* (Dec. 13, 2024); *United States v. Thomas*, No. 02-CR-

72, 2024 WL 552775, at *7 (D. Conn. Feb. 12, 2024) ("[T]he court finds the analysis in the

concurring opinion in *Reed* to be helpful."), *aff'd*, No. 24-CR-726, 2025 WL 1177663 (2d Cir.

Apr. 23, 2025); *United States v. Wallace*, No. 02-CR-72, 2023 WL 8435979, at *4 (D. Conn.

Dec. 5, 2023) (same).

---

[7] Miller's case was reassigned to Judge Garaufis after Judge Dearie retired.

9

Other courts have reached the opposite conclusion.  In *United States v. Allen*, the court held that a RICO conspiracy was not a covered offense under the First Step Act because "the Fair Sentencing Act did not change the statutory penalty range for an aggravated RICO conspiracy."  No. 03-CR-394, 2022 WL 2124495, at *8 (E.D. Va. June 13, 2022), *aff'd sub nom. United States v. Allen*, No. 22-6746, 2023 WL 3050985 (4th Cir. Apr. 24, 2023).  Before and after the Fair Sentencing Act, "a defendant charged with the four elements of an aggravated RICO conspiracy . . . would have faced a statutory penalty range from zero years to life imprisonment."  *Id.*  The court rejected the defendant's argument that "the punishment that he faced under § 1963 'turned on the punishments for the controlled substance offenses in 21 U.S.C. § 841(b)(1),'" finding that:

> To the extent that drug offenses form the predicate of a RICO conspiracy, the RICO charge does not 'turn on the punishment' for the drug offenses.  Rather, the RICO charge turns on the conduct underlying the drug offenses — the commission of a drug offense . . . . The element that includes the racketeering activity does not turn on the type or quantity of drug like the elements of the drug offenses do. Instead, 18 U.S.C. § 1963 controls the punishment, not 21 U.S.C. § 841(b). And, although the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b), it left the statutory penalties for 18 U.S.C. § 1963 unaltered.

*Id.; see also United States v. Celestine*, No. 95-CR-41, 2022 WL 3974143, at *6 (E.D.N.C. Aug. 31, 2022) (finding that the defendant's RICO convictions "are not covered offenses" because the defendant was serving a life sentence "for violating 18 U.S.C. §§ 1962(c) and (d) based on a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1) and (5)," not "for violating 21 U.S.C. § 846 based on an object of the conspiracy under 21 U.S.C. §§ 841(b)(1)(A)(iii) or (B)(iii)"); *United States v. Randolph*, No. 01-CR-304-11, 2022 WL 17170850, at *8 (E.D. Va. Nov. 22, 2022) (agreeing with *Allen* because "[t]he Fair Sentencing Act undoubtedly modified

the penalties for the predicate activity for [the defendant's] RICO offense, but it did not alter the penalties imposed for the RICO offense itself").

The government argues that *Reed* should not apply under any circumstances because the defendant's eligibility for a life sentence under Section 1963(a) did not depend on the drug-related predicate acts, and that the statutory penalty for the murder predicates is life imprisonment.  (ECF No. 932 at 7–8.)  Thus, even if the defendant had been acquitted of all the drug-related predicate acts, Count One would still have the same statutory penalties based on the murder convictions.  (*Id.*)

The Court assumes without deciding that Count One is a "covered offense" under the First Step Act, but denies the defendant's motion, because the § 3553(a) factors weigh against reducing his sentence.  *See Thomas*, 2024 WL 552775, at *7 ("assum[ing] for purposes of the instant motion that [the RICO count] is a 'covered offense,'" because the court ultimately concluded that the "§ 3553(a) factors weigh decisively against resentencing the defendant"); *Wallace*, 2023 WL 8435979, at *4 ("Because the court's ultimate conclusion in this case is that, on balance, the § 3553(a) factors weigh decisively against resentencing the defendant, the court assumes for purposes of the instant motion that Count 12 is a 'covered offense.'").[8]

## II.    Whether Resentencing is Warranted

Generally, federal courts may not "modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  However, courts may "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it

---

[8] The defendant concedes that even if the base offense level for his narcotics counts were adjusted under the current Guidelines, his Guidelines range would still be life imprisonment.  (ECF No. 922 at 7.)  Indeed, even if the defendant had been acquitted of the drug crimes, his Guidelines range would have been life, because the base offense level for any of the murders is 43.  U.S.S.G. § 2A1.1(a).  (*See* PSR ¶¶ 87, 93, 99.)

11

finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Castelle*, No. 18-CR-15, 2022 WL 4536798, at *1 (S.D.N.Y. Sept. 28, 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *see also United States v. Campbell*, No. 20-CR-4112, 2021 WL 6140303, at *2 (2d Cir. Dec. 29, 2021) (finding that although the sentencing factors in 18 U.S.C. § 3553(a) are "not mandatory considerations," they "'remain sound guiding principles' in the exercise of discretion") (summary order) (citation omitted).  "The defendant bears the burden of showing he is entitled to this relief." *Castelle*, 2022 WL 4536798, at *1.

The Court has considered the Section 3553(a) factors, and finds that they weigh against a sentence reduction.  Reducing the sentence would undermine the first factor, the "nature and circumstances of the offense."  *See* 18 U.S.C. § 3553(a)(1).  As Judge Dearie observed when he denied the defendant's motion for compassionate release, the defendant "occupied a 'significant role' in the Supreme Team and 'was relied on extensively . . . to run the operation, to oversee it, and to assist [ ] in the day-today operations of this organization, as well as attend to some of the more gri[s]ly necessities of the everyday life of [this] major organization.'"  (ECF No. 912 at 4 (quoting ECF No. 727 at 35:2-8).)  Under the defendant's direct supervision, the Supreme Team's "security force would carry out the enforcement duties of the organization, which included numerous murders, attempted murders and acts of intimidation."  (PSR ¶ 66.)  The number of murders — seven, including the four murders Judge Dearie found were proved by a preponderance of the evidence — warranted a life sentence.  (*Id.* ¶¶ 4–13, 57–62; Sentencing Tr. 23:18-25.)  But equally significant were the methods the defendant and his accomplices used to murder their victims; they bound the four Colombian men and tried to suffocate them using plastic bags and ropes, and when that did not work, they bludgeoned them with hammers and a

12

baseball bat.  (*Id.* ¶¶ 55–56.)  They killed two other victims in a similar way, by smothering them with plastic bags, and beating them with a hammer and baseball bat.  (*Id.* ¶¶ 60–62.)  As Judge Dearie held in 2022, the "sentence was, and continues to be, responsive to the brutality and callousness of his crimes of conviction."  (ECF No. 912 at 4.)  Thus, the defendant's sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."  18 U.S.C. § 3553(a)(2).  The defendant's lengthy sentence for such serious and violent conduct also serves as a "deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2).  Indeed, the defendant acknowledges that "notwithstanding his profound regret for this conduct and remorse for all of those effected [sic] by his past misdeeds . . . the nature and circumstances of the offense of conviction weigh strongly against a significant, if any, alteration of the sentence imposed."  (ECF No. 922 at 9.)

The defendant cites his "history and characteristics," 18 U.S.C. § 3553(a)(1) — specifically, his post-sentencing rehabilitation.  (*Id.* at 9.)  He maintains that his "upward trajectory towards rehabilitation is underscored by his completion of more than 50 educational courses."  (*Id.* at 10.)  He also relies on the Bureau of Prison's "PATTERN score," which demonstrates that there is a "minimum risk" that he will reoffend, and statistics showing that the likelihood of someone reoffending at his age — 63 years old — has "meaningfully declined."  (*Id.*)  The Court commends the defendant for his efforts, but concludes that they do not outweigh the magnitude of his crimes.  As Judge Dearie noted in denying the defendant's motion for compassionate release, the defendant participated in yet another murder — of another inmate — even after he was sentenced in this case, prompting the hearing official to observe that the defendant had "no regard for human life."  (ECF No. 912 at 3.)

In arguing that reducing his sentence would "avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6), the defendant points to cases in which courts reduced the sentences of defendants convicted of murders as part of narcotics conspiracies, including his co-defendant Gerald Miller, whom Judge Garaufis resentenced to time served in 2024. *See Miller*, 2024 WL 4107211. (ECF No. 922 at 11–12; ECF No. 936 at 5–7.)

Unlike Miller, however, the defendant was convicted of murdering three people, and Judge Dearie found that the government had proved by a preponderance of the evidence that the defendant participated in the murders of four other people. Judge Garaufis recognized the "multiple murders and acts of intimidation that happened under Mr. Miller's command and expansion efforts," but emphasized that Miller "was not convicted of violent crimes." *Miller*, 2024 WL 4107211, at *2. Indeed, Miller was acquitted of certain murders, in part because he was incarcerated when they were committed. *Id.* at *16 n.30. Although the defendant argues that Miller's "sentence was enhanced pursuant to section 2A1.1" for aiding and abetting the murders, he concedes that Miller was not convicted of any of the charged murders. (ECF No. 936 at 6–7 (citing *Miller*, 116 F.3d at 677).)

Judge Garaufis was also persuaded by Miller's "sincere remorse" and "extraordinary" rehabilitation. *Miller*, 2024 WL 4107211, at *12, 16. Miller "participated in numerous educational and therapeutic courses in prison, resulting in over 1,500 hours of programming," including "on topics such as healing, victim empathy, problem solving, drug abuse, diversity, and life after prison." *Id.* at *11. He was chosen to be a graduation speaker for a program called Getting Ready for the Outside World ("GROW"). *Id.* Bureau of Prisons employees submitted letters on Miller's behalf; a recreation specialist said that Miller was "constantly trying to better himself," and instructors said he "often served as a mentor to younger inmates in classes." *Id.* at

14

*11–12.  Moreover, other inmates, prison staff, and family wrote about Miller's "clear remorse for his past criminal activities."  *Id.* at *12.  Miller also "dedicated his time in prison to helping individuals recently released or soon-to-be released from federal custody to live positive, law-abiding lives on the outside," and helped "prison staff in maintaining peace and order."  *Id.* at *12–13.  On this record, Judge Garaufis concluded that it was "abundantly clear" that Miller "spent the last 34 years in federal custody transforming himself and taking what he has learned to make his community a safer and more peaceful place," and was "surely a different person than the man who led a violent drug enterprise almost 40 years ago."  *Id.* at *15.

The defendant notes that he expressed his remorse in his motion for compassionate release, and that he submitted letters from family members, friends, and inmates that he mentored with his compassionate release motion.  (ECF No. 936 at 6.)  Judge Dearie already considered those factors in denying the defendant's motion for compassionate release.  (ECF No. 912 at 4.)  On the record currently before the Court, those expressions of remorse and letters of support do not outweigh the horrific nature of the defendant's crimes.

One other factor that Judge Garaufis considered was the absence of any evidence that Miller's victims or their families objected to reducing Miller's sentence.  *See Miller*, 2024 WL 4107211, at *21 ("[T]he Government provides no evidence that [Miller's victims or their families] seek continued punishment for []Miller.")  The opposite is true in this case.  The families of two of the defendant's victims, Fernando Suarez and Pablo Perlaza, submitted letters to the Court in which they expressed their vehement opposition to the defendant's motion.  (ECF No. 935.)  While the families' position may not be "an absolute bar to relief," (ECF No. 936 at 4), the Court takes their letters into account in determining this motion.

15

Accordingly, under all the circumstances, the Section 3553(a) factors weigh against reducing the defendant's sentence, and the Court denies the defendant's motion.

## CONCLUSION

For these reasons, the Court denies the defendant's motion for reduction of his sentence pursuant to Section 404 of the First Step Act.

**SO ORDERED.**

<u>   s/Ann M. Donnelly   </u>
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      April 30, 2026